*John R. Bowne, surviving partner of John R. Bowne and Samuel Embree, v. John Shaw.*

*The same v. William Neilson and George Bunker.*

THESE were two actions on a policy of assurance, on the cargo of the schooner *Polly*, in which verdicts were taken for the plaintiff, subject to the opinion of the court on a case made, with liberty to turn the same into a special verdict.

The only question was on the effect of the warranty against loss, " by capture, or detention for, or " on account of any illicit trade, or trade in articles " contraband of war."

The facts were shortly these : The property insured, no part of which was contraband, really belonged to the plaintiff and his deceased partner, who were also owners of the schooner. They, however, as agents for *Joseph M. Stansbury*, shipped on his account, in the same vessel, other articles which were contraband, and *Embree* even made out the invoice in his own hand-writing. The difference of premium between contraband and other goods for that voyage, was 21 per cent. At the time, however, of subscribing the policy, *Shaw* knew there were contraband articles on board : *Neilson* and *Bunker* did not ; and as soon as they did know it, insisted on being discharged from the policy. This the plaintiff agreed to do, but did not erase their names from the instrument. The vessel was taken, and together with her cargo condemned as lawful prize. In promulging

the sentence, on the 13th of *December*, 1800, the judge rested himself on the general interest of the plaintiff in the contraband.    This he inferred from its appearing that *Stansbury* was part owner of the vessel in the *September* preceding, and there being no evidence of his having ever alienated his share.   He also relied on the invoice of the contraband being in the hand-writing of *Embree*.   It was, however, admitted, that the plaintiff had not, either directly or indirectly, any interest in the contraband articles.

In the case of *Neilson* and *Bunker*, the return of premium was the sole object of suit.    The defendants contending the broker was as much the debtor for the premium to the assured, as to the assurer, and, therefore, the action improperly brought.    The facts on this point are fully detailed in the opinion of the court.

*Hoffman*, for the plaintiff.    The court is called on to say, whether the warranty is confined to the goods insured by the policy, or shall be considered so extensive as to guard against all losses, whatsoever they may be, arising from any article on board which may be contraband.    There is no position of law more known, or more acted on than, that the mere letter of a contract is not to be the rule of exposition.    It is to be construed according to the spirit, and expounded according to the intent.    If so, though the words be large enough to cover all goods, we may examine into the intent, which cannot be better done than by inquiring into the reason of introducing this clause, the mischief it was meant to redress, and

R r

the remedy it was designed to afford.   It owes its origin to *Seton, Maitland & Co.*   They insured contraband merchandize without communicating its nature, and this court decided, a neuter need not avow the quality of his shipment, all goods being to him lawful trade.   To communicate to the underwriter, the particular species of commodity shipped, and yet to warrant only as to that commodity, was the clause introduced into our policies.   The conduct of *Neilson* and *Bunker* show this construction ought to be adopted.   On being informed there were contraband articles on board, they desired to be released from their responsibility ;   this was unnecessary, if the warranty covered those articles.   The generality of the construction is against it.   An importer must warrant against transactions and parties thousands of miles distant, and always in the dark.   This would destroy insurance itself.   Besides, *Shaw* underwrote with a knowledge of all the circumstances, and must be presumed to have taken the risk of consequences from contraband articles on himself.   Our construction, therefore, as to him must prevail.

*Pendleton* and *Harison*, contra.   The intention of introducing the clause, on the construction of which the whole of this controversy depends, was to relieve the underwriter from his general liability.   It was an exception from what was considered as the effect of the policy.   Being so, the exception must be co-extensive with the effect.   The words also used for this purpose are equally large.   They are, "for or on account of *any* illicit or prohibited trade."   But in deciding the present case, it is not necessary to determine the universal operation of the clause in ques-

tion. The plaintiff here was owner of the vessel. He is presumed connusant of all that comes on board. By the old maritime law, his vessel was liable to confiscation for having contraband on board, merely from the circumstance of his supposed knowledge. This, on general principles, would affect the cargo which belonged to him, because the taint of contraband is communicated wherever there is privity.* It is only in modern days that we have had the rule relaxed, but that is only when actual knowledge is not proved. Here the reverse is the case, and the circumstance of the plaintiff's partner having written out the invoice, was a principal ingredient in causing the condemnation. In the case of *Neilson* and *Bunker,* allowing the plaintiff entitled to recover, it must be from the broker, and not from the defendants.

* See the case of the *Franklin,* 3 *Rob. Ad. Rep.* 217. and the note there p. 221 (a). where this point is ably treated.

*Hamilton,* in reply. It is contrary to the principles of a warranty, that it should extend to all things. It can relate only to the subject matter insured. When we warrant of a certain thing, we warrant of that thing alone. When we warrant against acts, we may warrant against the acts of all the world. The intent of the clause cannot be doubted. It was framed by myself, to avoid the construction contended for on the other side, and to confine the operation of it simply to the article insured. I have heard that every new clause in an instrument, is but a fertile source of litigation, and it is with regret I find in myself a personal verification of the truth of the remark. But whatever may be the construction of the effect of the warranty, it cannot touch the present case, because all was known to the defendant. I cannot, however, agree, that the operation of the clause is to be differ-

ent against different persons. The rule of law must be the same as to all.

*Per Curiam,* delivered by LEWIS, C. J. The question between the parties to this suit arises upon *the warranty against loss by capture or detention for trading in articles contraband of war.* The effect which contraband shall have upon lawful goods, when going to the port of a belligerent, would be here a proper subject of inquiry, had the fact of the *Polly's* carrying such contraband been secreted from the insurer at the time of subscribing the policy. But it is stated in the case, that the circumstance was within his knowledge. It is, therefore, only necessary to inquire into the understanding the parties had of the contract they entered into. The goods covered by the policy on which this suit is brought were lawful, and insured at a premium of nine per cent. Certain contraband articles were shipped in the same vessel by the plaintiffs as agents, and insured at a premium of 30 per cent. With a knowledge of this fact, the defendant subscribed the policy, and as both parties must be presumed equally acquainted with the law upon the subject, he doubtless took the risk of all the consequences that might result to the lawful from the illicit goods : The warranty extending, in the understanding of the parties, to the goods only, which were the subject of the policy.

I am, therefore, of opinion, the plaintiff is entitled to recover as for a total loss.

In the case of the same plaintiff against *Neilson* and *Bunker,* I think the former entitled to a return of

premium. The broker who held funds of both par- ties, debited the plaintiff in account, with the whole amount of premium due on the policy, and credited the defendants for their proportion. In *May*, 1801, he settled with the plaintiff, and paid him a balance which did not include the premium in question. On two several accounts rendered the defendants, the amount of premium still stood to their credit. And although a balance in their favour has always lain in the hands of the broker to a greater amount than the premium, it does not appear to have been left there for the purpose of re-payment to the plaintiff. No authority for this purpose has ever been given, and the defendant must be considered as still withholding it from the plaintiff.