# COURT FOR THE CORRECTION OF ERRORS

#### OF THE

## STATE OF NEW-YORK,

#### DURING THE YEAR 1835.

---

Continued from Volume Fourteenth.

---

## THE AMERICAN INSURANCE COMPANY *vs.* DUNHAM & WADSWORTH.

Where, by a *policy of insurance*, the *barratry* of the master and mariners is insured against by the underwriter, and the vessel is lost through the barratrous act of the master in attempting an *illicit trade* by *smuggling* a few articles in his possession, the underwriter is liable, notwithstanding the policy contains a *warranty* on the part of the assured against *illicit* or *prohibited trade.*

Such warranty is not broken, unless the *illicit* trade is carried on by the *assured* himself, or with his *knowledge* or assent; he is not affected by the acts of the master or mariners.

ERROR from the supreme court. Dunham and Wadsworth brought an action against the American Insurance Company, in the superior court of the city of New-York, on three policies of insurance upon the vessel, cargo and freight of a schooner, to recover the damages and expenses incurred in procuring the liberation of the vessel and cargo from a seizure at *Porto Cabello,* in Columbia, for a violation of the laws of the country prohibiting the importation of *tobacco* and *cigars,* and for an intended fraud on the revenue, by reason of certain ar-

ALBANY,
Dec. 1835.

AmericanIns.
Co. of N. Y.
v.
Dunham.

ticles found in the possession of the master not being includ-
ed in his manifest. A quantity of tobacco and cigars was
found in the vessel, taken on board by the *master* and one of
the *crew* on their own accounts, without the knowledge or
consent of the owners of the vessel or the supercargo, for the
purpose of being smuggled into *Porto Cabello*. The policies,
amongst other things, insured against *the barratry of the mas-
ter and mariners*, and contained a warranty, on the part of the
insured, against *illicit* or *prohibited trade*, in these words: " It
is also agreed, that the property be warranted by the assured,
free from any charge, damage or loss, which may arise in con-
sequence of a seizure or detention, for or on account of any
illicit or prohibited trade, or any trade in articles contraband
of war." It was admitted by the defendant's counsel that
the conduct of the master and one of the crew was *barratrous*,
but they insisted that the defendants were protected from lia-
bility, by the warranty against illicit or prohibited trade. The
judge, who presided at the trial, instructed the jury that the
clause referred to did not protect the defendants from liability,
and the jury, under his charge, found a verdict for the plain-
tiffs. The defendant having procured a bill of exceptions to
be signed, the cause was carried up by writ of error to the su-
preme court, where the judgment below was *affirmed*. See
the case and opinion delivered in the supreme court, 12 *Wen-
dell*, 463. The defendants thereupon removed the record in-
to this court, where the cause was argued by

*D. Lord, jun. & J. Duer*, for the plaintiffs in error.

*G. Griffin*, for the defendants in error.

The following opinions were delivered :

By the CHANCELLOR. The policies in this case contain
the usual clause of insurance against barratry by the master
or mariners, and the warranty, usually inserted in the New-
York policies against loss by seizure on account of illicit or
prohibited trade, or trade in articles contraband of war. The
loss was unquestionably occasioned by the barratry of the
master and some of the mariners. Barratry by the master of

a vessel may be defined to be, any act of the master to the injury of his owners or freighters, without their assent, which is criminal in itself, or which is illegal and fraudulent as to the owners or freighters ; or any wilful neglect of his duty to them as an honest and faithful agent. Here the whole loss was occasioned by the improper and fraudulent acts of the master and some of the mariners, in clandestinely taking on board prohibited articles, on their own account, for the purpose of smuggling them into Porto Cabello, contrary to the laws of the Colombian government, and making a false manifest to protect such articles, by which the vessel and cargo were seized as forfeited. The only question, therefore, is whether the underwriters are protected from liability for the loss occasioned by this act of barratry, by the warranty against loss by seizure on account of illicit or prohibited trade.

This question was distinctly settled against the underwriters, by the supreme court of this state, in the case of *Suckley* v. *Delafield*, 2 *Caines' Cas*. 222, more than twenty years before the making of these policies ; and the decision appears to have been acquiesced in until the question was again raised in this case. Although that decision of the supreme court is not absolutely binding upon this court of dernier resort, yet, after the law has been considered as settled for such a length of time, in relation to the construction of a commercial contract, we should not for any slight cause, attempt to disturb that decision. I have before had occasion to say, in relation to the law of insurance, that it is not only important that it should be fixed and certain, but it is also desirable that the principles adopted in the construction of policies, and as to the liabilities of underwriters, should be the same in all the courts of this country. If, therefore, we had found any settled course of American decisions in opposition to that of the supreme court in *Suckley* v. *Dalafield*, there might be some reason for examining the principles upon which that decision rests, even after this lapse of time, with greater scrutiny. But so far as I have been able to learn, there are no American or English decisions which come in conflict with it. On the contrary, I find some decisions in both countries which appear to support the construction of the policy contended for by

ALBANY,<br/>Dec. 1835.<br/><br/>AmericanIns.<br/>Co. of N. Y.<br/>v.<br/>Dunham.

ALBANY,
Dec. 1835.

AmericanIns.
Co. of N. Y.
v.
Dunham.

the assured, and which has been given to it by the supreme court.

It is supposed, by the counsel for the plaintiffs in error, that it was well settled before the introduction of the warranty against illicit trade into New-York policies, that the underwriters were not liable for any loss on account of illicit or prohibited trade, which was carried on with the assent of the assured ; and that this clause must therefore have been intended to cover illicit trading by the master, in violation of his duty to the owners. The cases cited, however, only show that the underwriters were not liable for a loss on account of an illegal trade carried on by the owners without the knowledge of the insurers, and which the latter had no reason to suppose the assured would be engaged in at the time of underwriting the policy. The question would, therefore, constantly arise from evidence dehors the policy, whether the underwriter was aware of the particular kind of trade intended to be carried on by the assured. This was of itself a sufficient cause for inserting an express warranty in the policy, against liability for loss on account of illicit trade carried on with the assent of the owners ; although both parties might have intended that the underwriters should be liable for any loss occasioned by the barratrous acts of the master or mariners. Besides, it appears from the opinion of Chief Justice Tilghman, in the case of *Smith* v. *The Delaware Ins. Co.*, 3 *Serg. & Rawle*, 82, that this clause was introduced into the policies of this country about the year 1788, in consequence of disputes which had arisen between the underwriters and the assured, as to the liability of the former for losses which arose from seizures for breaches of the revenue laws of foreign countries : the assured contending that unless those laws were known to them, the underwriters were liable. The doubt which then existed as to the liability of the underwriters in such a case, was certainly a sufficient reason for inserting this clause, to prevent any such disputes for the future arising out of the acts of the assured ; and without rendering it necessary for us to suppose that the parties intended by this clause to exempt the underwriters from liability for loss occasioned by illicit trade, carried on by the barratry of the mas-

ter; which loss was expressly insured against by another clause in the policy.

There is nothing in the statement of Chief Justice Tilgh- man, in the case last referred to, which conflicts with the reported assertion of general Hamilton, *arguendo*, in *Bowne* v. *Shaw*, 1 *Caines' R.* 491. It will be seen that the question under consideration in the case of *Bowne* v. *Shaw*, related to the warranty against the loss *by trade in articles contraband of war*; which warranty does not appear to have been contained in the Pennsylvania pol'cies, to which Chief Justice Tilghman alludes. It is very probable, therefore, that after the decision of the supreme court in *Seton* v. *Lowe*, 1 *Johns. Cas.* 1, in which case General Hamilton was one of the counsel for the underwriter, he might have added the whole clause, as now found in the New-York policies, adopting that part which related to illicit or prohibited trade, from the policies then in use in Philadelphia.

It is a general rule, applicable to the construction of all written instruments, that such a construction should be given to them, if possible, as to give full effect to every clause thereof; and this rule certainly applies to the construction of the different printed clauses in a policy of insurance, where such construction is not controlled by commercial usage, although the rule may have been somewhat relaxed in construing the printed in connection with the written clauses in the policy. The particular clause now under consideration does not appear to be contained in the English policies, and therefore no case precisely in point is to be found in the reports of that country. But the decision of the court of king's bench, in *Havelock* v. *Hancill*, 3 *T. R.* 277, appears to be the same in principle as that of the supreme court in this case. There the ship was insured by the underwriter for twelve months, *in any lawful trade*, with the usual clause of insurance against barratry of the master and mariners. The declaration alleged, that while the vessel was engaged in a lawful trade, the master, without the consent or privity and against the will of the assured, fraudulently, clandestinely, unlawfully and barratrously imported from Ostend into the port of Shields a quantity of foreign brandy; whereby the

vessel became forfeited, and was seized by the officers of the customs, and the assured was obliged to expend £408 in obtaing restitution thereof. The underwriter put in a demurrer to the declaration; and his counsel, as in this case, insisted that the insurance did not cover a loss by a seizure of the vessel, in consequence of its being engaged in an unlawful trade; although the illegality of the trade in which the vessel was engaged arose from the barratrous act of smuggling by the master. That it would be highly mischievous, if underwriters should be liable for such a loss, because it would make the owner negligent in his appointment of the master and mariners, if he were not to be affected by their misconduct. But the court, without waiting to hear the counsel for the assured, gave judgment in his favor. Lord Kenyon, C. J. said, if the owner conducted himself with propriety, he was entitled to be indemnified against all the perils insured against iu the policy; that it was too late to consider whether it was wise that policies should extend to protect the owners against the acts of the master or mariners, over whom the underwriters had no control; that the vessel was sent by the owner on a lawful voyage, but was lost by the misconduct of the master, in taking on board certain commodities which subjected the vessel to seizure; that the words *lawful trade,* in the policy, meant the trade in which the ship was sent by the owners, and that the owners in that case had not engaged in any unlawful trade.

In the case of *Wilcocks* v. *The Union Insurance Company,* 2 *Binn. R.* 574, in the supreme court of Pennsylvania, there was an apparent conflict between the different clauses in the policy, the assured having warranted the property to be neutral, which implied that it should be so conducted by the assured and their agents that it should remain neutral during the voyage; and the underwriters having agreed to insure, among other things, against loss by barratry of the master or mariners. The loss was, in one count of the declaration, alleged to have been occasioned by a barratrous act of the master and mariners, but which at the same time, was a breach of neutrality. In relation to this part of the case, Chief Justice Tilghman, before whom the cause was tried, decided, and

ALBANY,
Dec. 1835.

AmericanIns.
Co. of N. Y.
v.
Dunham.

so charged the jury, that the policy must be so construed as to leave the insurance against barratry in full force; that the warranty of neutrality, in connection with the express insurance against barratry, therefore, implied, that as to all acts done by the assured themselves, or by their agents, except only such acts as amounted to barratry, the neutral character should be preserved. These two cases, I think, fully sustain the decision of the supreme court of this state, relative to the construction of a policy containing a warranty against seizure on account of illicit or prohibited trade, in connection with a clause of insurance against barratry by the master and mariners. Indeed, in the case of *Wilcox* v. *The Union Insurance Company*, Chief Justice Tilghman says, in reference to such a policy, "It is understood that if a loss arises from illicit trade of the captain amounting to barratry, the insurers are liable." 2 *Binney*, 579. A majority of the supreme court of errors of the state of Connecticut also decided, in the case of *Brown* v. *The Union Insurance Company*, 5 *Day's R.* 1, that a warranty of neutrality did not extend to a breach occasioned by a barratarious act of the master, where the policy contained the usual clause of insurance against barratry.

Upon principle and authority, therefore, independent of any question as to the justice or the expediency of disturbing a judicial construction of a clause in a policy of insurance after it has been acquiesced in for more than thirty years, I think the judgment of the court below is correct and that it should be affirmed.

By Senator VAN SCHAICK. The underwriters admit the barratry, and set up as a defence that they are protected by the clause in the policy which warrants the property free from any charge or loss incurred in consequence of illicit or prohibited trade. To maintain this ground, the counsel for the company lay down certain general propositions, deduced from the character which they assign to the stipulation, and from these premises construct a theory by which they endeavour to make it appear that the warranty against illicit trade extends to such trade, whether it be carried on or attempted by the owner of ship or cargo, or any stranger or other person. As I consider

ALBANY,
Dec, 1835.

American Ins.
Co. of N. Y.
v.
Dunham.

the position assumed in their first point radically defective, and as all their other points are mere consequences of their primary position, it will not be necessary to enter into a refutation of their argument; but denying the ground assumed by the counsel, I purpose simply to shew, by reason and authority, that barratry is not excluded from the policy by the warranty.

"Barratry of the master and mariners" is any unlawful practice committed by them, without the knowledge and consent of the owner or insured, in consequence of which the vessel and cargo are rendered liable to loss. In this case, the laws of the state of Columbia were violated by the master and cook, in not having certain goods entered on the manifest, and in concealing them for the purpose of carrying on a clandestine and illicit trade. By the qualifying clause the assured warrant the property " free from any charge, damage, or loss which might arise in consequence of any illicit or prohibited trade, or in any trade in articles contraband of war." Against whom, and in regard to what do the assured warrant? Against their own acts, and the lawful or authorized acts of their agents or servants, not against the acts of other parties, strangers to the contract of insurance, and who are operating with other property. The property warranted to be free is the cargo insured; the words of the clause do not include both the acts and the property of persons not parties to the insurance, and it would be requisite that they should comprehend both those particulars to enable the clause to destroy the distinct and express insurance which the company make against " barratry of the master and mariners." Did the underwriters intend to protect themselves against the unlawful acts of strangers, guilty of smuggling property on board for the purpose of its being smuggled ashore, of which acts and property the assured was ignorant, which it was his interest to prevent, and against the injurious effects of which he was told, by the policy, that he had paid a premium to be insured? So deceptive a purpose could not have been entertained, because barratry is insured against in the broad and technical terms well known to the law; and if it was afterwards intended to be excepted from the policy, it should have been so declared, in words at least as plain and unambiguous as those by which it

is included in the risk assumed by the underwriter. In regard to the latitude of construction to be given to the warranty, I will even venture to say, that if an underwriter positively knew that there was contraband on board, the warranty as to contraband could have no effect. So of that as to an illicit or prohibited trade. The clause can therefore only be active when it is found to apply to a trade concealed, or at most not divulged by the owner. But can he divulge, or be accused of concealing illicit or prohibited goods, when he is ignorant of their existence ? The lawful conduct of the master and crew is a risk taken by the underwriter. It applies as well to the preservation of the cargo as to the management of the ship ; and the company can avoid the responsibility of leaving assured the barratry, only by using express terms or by striking that risk out of the contract. It would destroy all the security acquired by a specific bargain, if a general clause could defeat it. In this way the protective character, of a policy may be reduced to a simple sea-risk, and the ample and perfect security contemplated by the policy would be frustrated. Notwithstanding that some judges have wondered that underwriters should insure the good conduct of officers not appointed by themselves, yet it is a wise proceeding, founded in just views of the dangers and necessities belonging to mercantile adventures. In the case in 6 *Cranch*, 274, there were two interests, one belligerent and one neutral. The belligerent interest was contingent upon the profits of the voyage. Insurance was effected upon the cargo by the neutral owner, as neutral property. Loss by capture and condemnation ensued. The court held, in regard to the operation of the warranty of neutrality, " The assured are not understood to warrant that the whole cargo is neutral, but that the interest insured is neutral." This was delivered by Chief Justice Marshall, and it needs no comment to show that by a parity of reasoning it must be the interest *insured* which is warranted against illicit or prohibited trade. From this course of reasoning I conclude that the barratry of the master and cook is not stipulated against by the warranty ; and a short history of the origin of the clause, and of the cases which have been decided since

ALBANY,
Dec. 1835.

American Ins.
Co. of N. Y.
v.
Dunham.

its incorporation into the New-York policies, will sufficiently establish that conclusion.

In the case of *Seton and others* v. *Low*, 1 *Johns. Cas.* 1, the owner or agent had insurance made upon contraband, without communicating to the underwriters the character of the goods. Mr. Justice Kent held the goods to be lawful within the meaning of the policy, because their exportation was not prohibited by the laws of this country. Upon the other point he, with some hesitation, pronounced that the assured was not bound to disclose to the insurers that the property insured was contraband of war ; but this opinion was placed upon the public notoriety of all the important circumstances which affected the case, the principal of which were, that the vessel was bound to a belligerent port, and with goods entitled to admission by virtue of a proclamation of the governor of the country. These circumstances the underwriters were presumed to know. In consequence of this decision, General Hamilton drew the clause of warranty, 1 *Caines*, 489. Its origin, therefore, discloses that its special purpose was to protect the underwriter against the act of the owner, by compelling him to make known the character of the goods, "and to confine the operation of it simply to the article insured."

*Thus it* appears that the warranty was not devised for the purpose of changing the law in relation to *barratry of the master and mariners*, as it existed previously to the introduction of the clause ; and the cases in 1 *Caines*, 489, in which it was held that "the warranty extended, in the understanding of the parties, to the goods only which were the subject of the policy ;" and in *Suckley* v. *Delafield*, 2 *Caines*, 222, in which the court decide the point, that an unlawful trade carried on by the master was barratrous, confirm the doctrine as being still the law of the land. That these cases were determined in the spirit of the English law, may be seen by comparing them with the opinion of Lork Kenyon in 3 *T. R.* 278 ; and the doctrine there laid down, "that lawful trade in the policy means the trade in which the ship is sent by the owners," is analogous in spirit to the cases decided in *Caines*. To me it is evident, from a reasonable construction of the meaning of the policy, from the law of the case, and the origin

of the warranty, that it extends only to the goods and acts of the owner or the assured, and that it does not protect the company from barratry of the master and cook.

Upon the question being put, *Shall this judgment be reversed?* twenty-three members of the court (24 being the whole number present) voted in the *negative*, and only one member voted in the affirmative.

Whereupon the judgment of the supreme court was AFFIRMED.